5 N.Y.3d 486 (2005)
840 N.E.2d 115
806 N.Y.S.2d 146
In the Matter of NEW YORK CITY ASBESTOS LITIGATION.
ELIZABETH HOLDAMPF et al., Respondents,
v.
A.C. & S., INC., et al., Defendants, and
PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Appellant.
Court of Appeals of the State of New York.
Argued September 13, 2005.
Decided October 27, 2005.
*487 Segal McCambridge Singer & Mahoney, Ltd., New York City (Christian H. Gannon, Dwight A. Kern and Robert R. Rigolosi of counsel), for appellant.
*488 Weitz & Luxenberg, P.C., New York City (Erik Jacobs and Stephen J. Riegel of counsel), for respondents.
Shook, Hardy & Bacon, L.L.P., Washington, D.C. (Victor E. Schwartz and Mark A. Behrens of counsel), Crowell & Moring *489 LLP, Washington, D.C. (Paul W. Kalish and Mark D. Plevin of counsel), Karen R. Harned, Washington, D.C., Donald D. Evans, Arlington, Virginia, Ann W. Spragens and Robert J. Hurns, Des Plaines, Illinois, and Robin S. Conrad and Amar D. Sarwal, Washington, D.C., for Coalition for Litigation Justice, Inc., and others, amici curiae.
Michaels & Smolak, P.C., Auburn (Michael G. Bersani of counsel), for Asbestos Disease Awareness Organization and others, amici curiae.
Before: Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur; Chief Judge KAYE taking no part.

OPINION OF THE COURT
READ, J.
We are asked to decide whether the Port Authority of New York and New Jersey (Port Authority) owes a duty of care to plaintiff wife, who was allegedly injured from exposure to *490 asbestos dust that plaintiff husband, a Port Authority employee, introduced into the family home on soiled work clothes that plaintiff wife laundered. We conclude that there is no duty of care.

I.
Plaintiff John Holdampf was employed by the Port Authority from 1960 to 1996 in various blue-collar positions, working at one time or another in most of the Port Authority's 26 locations. Over the course of his 36-year job tenure, he handled asbestos-containing products. The Port Authority issued five uniforms to John Holdampf and offered a laundry service: soiled uniforms placed in a designated stationary cabinet at the workplace were sent offsite for cleaning. About half of the time, however, he opted to bring dirty work clothes home for cleaning for reasons of "[c]onvenience" and because there were no showers available at work.
John Holdampf married plaintiff Elizabeth Holdampf in 1971. As relevant to this appeal, Elizabeth Holdampf testified at her deposition that her husband told her sometime in the 1970s that he handled asbestos at work, and that she was consequently exposed to asbestos when she washed her husband's soiled uniforms.[1] Elizabeth Holdampf was diagnosed with mesothelioma[2] in August 2001.
*491 Plaintiffs sued to recover for injuries allegedly caused by exposure to asbestos and asbestos-containing products and/or equipment and materials, naming asbestos manufacturers or suppliers as defendants. On January 4, 2002, plaintiffs filed a second amended complaint, which added the Port Authority as a defendant.
The second amended complaint, which incorporates plaintiffs' attorneys' "Amended Standard Asbestos Complaint for Personal Injury No. 6," sets out seven causes of action  six claims for direct injury sounding in negligence, breach of warranty, products liability, enterprise liability, and violations of Labor Law §§ 200 and 241 (6), and one derivative claim for loss of services and consortium. The first cause of action, which is at issue on this appeal, alleges that defendants "negligently failed to warn and failed to provide adequate instructions of any potentially safer handling methods which should have been utilized by users, handlers, or other persons who were reasonably and foreseeably known to come into contact with the asbestos-containing products and/or equipment and materials."
On December 4, 2002, the Port Authority moved for summary judgment to dismiss the complaint,[3] arguing that Elizabeth Holdampf could not recover for direct injuries because exposure to her husband's work clothes at the family home was "not connected to [her] employment at any Port Authority site." The Port Authority relied on Widera v Ettco Wire & Cable Corp. (204 AD2d 306 [2d Dept 1994], lv denied 85 NY2d 804 [1995] [infant plaintiff may not recover in negligence from father's employer due to injury caused by in utero exposure to toxic chemicals father brought home on his work clothes because employer owes no duty to individuals who are not employees]).
In response, plaintiffs argued that Elizabeth Holdampf was exposed to asbestos that the Port Authority "negligently permitted to leave its sites," and that the Port Authority owes a duty to protect nonemployees from exposure to asbestos. Plaintiffs cited two cases to support their position. The first case, Baker v *492 Vanderbilt Co. (260 AD2d 750 [3d Dept 1999] [no appeal]), distinguished Widera and found that a mine operator can owe a duty to third parties allegedly injured off the mining site by exposure to airborne asbestos-containing talc. The Court relied on 53A Am Jur 2d, Mines and Minerals § 339 ("mining activities will be found to create a nuisance if they cause excessive smoke, fumes, or dust, resulting in damage to crops and vegetation or discomfort to neighboring residents") and 85 NY Jur 2d, Premises Liability § 270 (addressing a landowner's violation of a statute or regulation). The second case cited by plaintiffs, Kowalski v Goodyear Tire & Rubber Co. (841 F Supp 104 [WD NY 1994] [manufacturer of tires owed duty to employee's spouse who allegedly became ill with cancer after exposure to tire chemicals on husband's work clothes]), is a pre-Widera decision of a federal court interpreting New York law. Plaintiffs provided documentary evidence to show that the Port Authority knew, as early as 1969 when it was building the World Trade Center, that the spraying of asbestos fireproofing during construction presented a risk of harm to "bystanders."
On January 16, 2003, Supreme Court granted the Port Authority's motion for summary judgment in a one-sentence short-form order, "based on [the] Widera case and absence of duty to plaintiff." On December 2, 2004, the Appellate Division modified Supreme Court's order by reinstating plaintiffs' first cause of action in common-law negligence because the Port Authority, which relied "almost exclusively on the Widera rationale that an employer owes no duty of care to nonemployees outside the workplace" (14 AD3d 112, 116 [1st Dept 2004]), thereby "failed to demonstrate a lack of duty as a matter of law" (id. at 121 n 2).
In reaching this conclusion, the Appellate Division distinguished Widera "because it involved the unique question of a tortfeasor's liability to an infant for injuries occurring while in utero" (id. at 117); grounded the Port Authority's duty on its status as a landowner; defined the scope of the Port Authority's duty by reference to decisions in other jurisdictions that have held manufacturers and suppliers of asbestos products liable to injured third parties;[4] and limited its holding to "members of each employee's household who were exposed at home to *493 asbestos dust from an employee's workplace clothes, by washing the clothes or otherwise" (id. at 122). The Appellate Division subsequently granted leave and certified the following question to us: "Was the order of [the Appellate Division], which modified the order of the Supreme Court, properly made?"

II.
As we recently stated in Hamilton v Beretta U.S.A. Corp. (96 NY2d 222, 232 [2001]),
"[t]he threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff? Courts traditionally fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability. Thus, in determining whether a duty exists, courts must be mindful of the precedential, and consequential, future effects of their rulings, and limit the legal consequences of wrongs to a controllable degree" (citations and internal quotation marks omitted).
Further, "[f]oreseeability, alone, does not define duty  it merely determines the scope of the duty once it is determined to exist" (id.; see also Pulka v Edelman, 40 NY2d 781, 785 [1976], rearg denied 41 NY2d 901 [1977] ["Foreseeability should not be confused with duty. The principle expressed in Palsgraf v Long Is. R.R. Co. . . . is applicable to determine the scope of duty  only after it has been determined that there is a duty"]). A specific duty is required because otherwise, a defendant would be subjected "to limitless liability to an indeterminate class of persons conceivably injured" by its negligent acts (Hamilton, 96 NY2d at 232 [citation and quotation marks omitted]). "Moreover, any extension of the scope of duty must be tailored to reflect accurately the extent that its social benefits outweigh its costs" (id.).
Hamilton also emphasizes our reluctance to extend liability to a defendant for failure to control the conduct of others. "This judicial resistance to the expansion of duty grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another" (id. at 233). Generally, such a duty may arise only

*494 "where there is a relationship either between defendant and a third-person tortfeasor that encompasses defendant's actual control of the third person's actions, or between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others. Examples of these relationships include master and servant, parent and child, and common carriers and their passengers" (id.).
The "key" consideration critical to the existence of a duty in these circumstances is "that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm"; and that "the specter of limitless liability is not present because the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship" (id.).
In this case, plaintiffs begin their analysis of duty with a discussion of foreseeability; however, foreseeability bears on the scope of a duty, not whether a duty exists in the first place (see discussion at 493). As "[o]ther factors" to support a duty running from the Port Authority to Elizabeth Holdampf, plaintiffs adduce two kinds of relationships: the Port Authority's status as an employer and as a landowner.
According to plaintiffs, the Port Authority's status as an employer placed it in a position "to control or prevent [John Holdampf] from going home with asbestos-contaminated work clothes," or at least to give "warnings to him and its other employees and through them, to the potential victims in their households." Plaintiffs also suggest that "the Port Authority arguably had a relationship to some extent with Elizabeth Holdampf, through her relation as the spouse of one of its employees, who was the `carrier' of the endangering risk" because she "was the beneficiary of various work-related benefits provided by the Port Authority, such as health care, life insurance and a pension, as well as government-provided benefits based on her husband's employment, such as disability or Social Security benefits."
At common law, an employer owed a duty to provide "a safe workplace" (see Widera, 204 AD2d at 307). New York has codified this common-law duty at Labor Law § 200, and the duty is limited to employees (see Mordkofsky v V.C.V. Dev. Corp., 76 NY2d 573 [1990] [Labor Law § 200, which codifies an employer's common-law duty, does not extend to individuals who are not employees]). In Widera, the Appellate Division properly refused *495 to recognize a cause of action for common-law negligence against an employer for injuries suffered by its employee's family member, allegedly as a result of exposure to toxins brought home from the workplace on the employee's work clothes (see also Ruffing v Union Carbide Corp., 1 AD3d 339 [2d Dept 2003] [following Widera, and finding that wife and child allegedly injured by exposure to chemicals on husband's work clothes had no claim against husband's employer]).
This is not a situation where there is a relationship "between defendant [the Port Authority] and a third-person tortfeasor that encompasses defendant's actual control of the third person's actions" (Hamilton, 96 NY2d at 233), because there is no third-party tortfeasor in this case (cf. Pulka [defendant garage owner and third-party tortfeasor customer]; Purdy v Public Adm'r of County of Westchester, 72 NY2d 1 [1988] [defendants residential health care facility and its employee-director and third-party tortfeasor patient]; D'Amico v Christie, 71 NY2d 76 [1987] [defendant employer and third-party tortfeasor ex-employee]). Nor is this a situation where there is a relationship "between defendant [Port Authority] and plaintiff [Elizabeth Holdampf] that requires defendant to protect plaintiff from the conduct of others" (Hamilton, 96 NY2d at 233). Specifically, there is no relationship between the Port Authority and Elizabeth Holdampf  much less that of master and servant (employer and employee), parent and child or common carrier and passenger, the examples cited in Hamilton.
Although plaintiffs protest that the Port Authority was "in the best position to protect against the risk of harm" (id.) to Elizabeth Holdampf because it might have compelled John Holdampf to wear clean clothes home from work or to warn Elizabeth Holdampf about the dangers of washing his soiled uniforms, the Port Authority was, in fact, entirely dependent upon John Holdampf's willingness to comply with and carry out such risk-reduction measures. There is no authority suggesting that the Port Authority owed a duty of care to protect Elizabeth Holdampf against its allegedly negligent acts because she was a beneficiary of her husband's work-related benefits, as plaintiffs maintain is "arguably" the case.
Although plaintiffs contend otherwise, the cases that they cite from other jurisdictions lend little or no support for the novel employer's duty that they advance. In Kowalski, the Federal District Court denied an employer's motion for summary judgment, finding that plaintiffs had supported their allegations of *496 negligence and an employer's duty of care running from the husband's employer to his wife, who allegedly contracted cancer through exposure to her husband's contaminated work clothes. As already noted, however, the court decided this case before the Appellate Division handed down Widera. Even more importantly, this case predates our decision in Hamilton (see Kowalski, 841 F Supp at 110 [while acknowledging that "(t)he rule set out in Pulka that a duty must be found before determining its scope through foreseeability is still good law in New York," the court nonetheless proceeded to follow "the more dialectical approach to duty" by factoring foreseeability into the determination of whether a duty existed]).
In Zimko v American Cyanamid (905 So 2d 465 [La Ct App, 4th Cir 2005]), plaintiff sued his father's employer claiming injury from exposure to asbestos dust that his father allegedly brought into the family home on his work clothes. The court summarized the Appellate Division's decision in this case, and, without providing an independent analysis, concluded that the father's employer owed a duty of care to the son.
In CSX Transp., Inc. v Williams (278 Ga 888, 608 SE2d 208 [2005]), plaintiffs alleged that they were exposed to asbestos on their fathers' or husband's work clothing and sued the employer in negligence. The Supreme Court of Georgia, answering a certified question from the United States Court of Appeals for the Eleventh Circuit, declined to follow the Appellate Division's decision in this case. Instead, Georgia's highest court followed Widera, holding that "an employer's duty to provide a safe workplace does not extend to persons outside the workplace" (278 Ga at 892, 608 SE2d at 210).
Plaintiffs alternatively advocate for a duty of care grounded in the Port Authority's status as a landowner. A landowner generally must "exercise reasonable care, with regard to any activities which he carries on, for the protection of those outside of his premises" (Prosser and Keeton, Torts § 57, at 387 [5th ed]). In this regard, the Appellate Division has recognized that a landowner's duty of reasonable care can run to the surrounding community when mining practices carried out on the landowner's property cause the negligent release of toxins into the ambient air (see Baker, 260 AD2d 750 [1999]).
As the Port Authority points out, however, the facts alleged in this case are far different from the facts in Baker. Here, the Port Authority did not discharge toxins into the atmosphere. *497 Rather, plaintiffs allege that the Port Authority was aware that asbestos-containing products handled by John Holdampf at work might result in off-site exposure when he left the workplace wearing soiled work clothes, but failed to warn or to provide him with adequate instructions so that he might communicate information about this risk to his spouse.
Plaintiffs also urge us to adopt the reasoning of Olivo v Exxon Mobil Corp. (377 NJ Super 286, 872 A2d 814 [Super Ct, App Div 2005], certification granted 185 NJ 39, 878 A2d 855 [2005]). There, plaintiff sued Exxon Mobil, the owner of one of the premises where he worked with asbestos-containing products while employed by other entities as a welder/steamfitter. Plaintiff's wife died from mesothelioma, allegedly as a result of her exposure to asbestos while laundering his work clothes.
The intermediate New Jersey appellate court followed the Appellate Division's decision in this case, concluding that Exxon Mobil owed a duty as a landowner. The court reasoned that under New Jersey law, manufacturers and suppliers of asbestos-containing products owe a duty of care to third parties, and that there was no reason not to extend a similar duty to a landowner. As already noted, however, we have never considered whether manufacturers and suppliers of asbestos-containing products owe a duty of care to third parties. Moreover, "[o]nce the foreseeability of an injured party is established," duty comes down to a question of fairness under New Jersey law (377 NJ Super at 295, 872 A2d at 820). The court concluded that Exxon Mobil was in the best position to prevent harm and could have done so easily by providing laundry and shower services. Thus, it was foreseeable that the wife of a worker would be injured by exposure to her husband's work clothes, and fair to impose a duty (cf. Nelson, From Fairness to Efficiency: The Transformation of Tort Law in New York, 1920-1980, 47 Buff L Rev 117 [1999] [discussing generally the shift in emphasis in New York's tort law from fairness and moral blameworthiness to efficiency and deterrence]).
Olivo is distinguishable legally in that New Jersey, unlike New York, relies heavily on foreseeability in its duty analysis. Moreover, Olivo can be distinguished factually in that the landowner did nothing to prevent workers from bringing asbestos-covered clothing into the family home  an important component of that court's duty analysis  whereas here, the Port Authority provided laundry services to John Holdampf, which is relevant under New York law as to whether the Port Authority breached any duty that it may have owed Elizabeth Holdampf.
*498 In sum, plaintiffs are, in effect, asking us to upset our long-settled common-law notions of an employer's and landowner's duties. Plaintiffs assure us that this will not lead to "limitless liability" because the new duty may be confined to members of the household of the employer's employee, or to members of the household of those who come onto the landlord's premises. This line is not so easy to draw, however. For example, an employer would certainly owe the new duty to an employee's spouse (assuming the spouse lives with the employee), but probably would not owe the duty to a babysitter who takes care of children in the employee's home five days a week. But the spouse may not have more exposure than the babysitter to whatever hazardous substances the employee may have introduced into the home from the workplace. Perhaps, for example, the babysitter (or maybe an employee of a neighborhood laundry) launders the family members' clothes. In short, as we pointed out in Hamilton, the "specter of limitless liability" is banished only when "the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship" (Hamilton, 96 NY2d at 233). Here, there is no relationship between the Port Authority and Elizabeth Holdampf.
Finally, we must consider the likely consequences of adopting the expanded duty urged by plaintiffs. While logic might suggest (and plaintiffs maintain) that the incidence of asbestos-related disease allegedly caused by the kind of secondhand exposure at issue in this case is rather low, experience counsels that the number of new plaintiffs' claims would not necessarily reflect that reality.
Accordingly, the order of the Appellate Division should be reversed, with costs; the order of Supreme Court reinstated; and the certified question answered in the negative.
Order reversed, etc.
NOTES
[1] Elizabeth Holdampf testified to several additional sources of potential asbestos exposure. Specifically, she worked for New York Airways Helicopter Service from 1962 to 1973 as a clerk in offices in two hangers at LaGuardia Airport. She thought that she "could have been" exposed to asbestos during her employment at LaGuardia, but she could not identify any asbestos-containing product present in the workplace. Her father was a mechanic who worked on brake linings, and as a child she often met her father when he arrived at the bus stop after work, and carried his bundled, soiled work clothes home; she also helped her mother launder them. As an adult, she assisted in cleaning up scrap when her husband replaced asbestos shingles on the family home's roof and later, when he replaced asbestos siding with vinyl siding. Further, from some time before 1971 until 1996 John Holdampf moonlighted as a self-employed automobile repairman who worked on roughly 100 cars a year. He "replaced worn-out clutches which they turned to powder when you are working on them, [and] brake shoes constantly," usually in the family home's attached garage with the overhead door closed, but sometimes in the driveway. As he described a "brake job," when he disassembled the brake system, it would be "all full of brake dust, brake powders," and "[y]ou clean it with a solvent or, years ago, it used to be a blow gun," which for "[a] minute or two. . . would create a major dust storm."
[2] The most common form of mesothelioma, a rare and deadly cancer, affects the pleura, the membrane or sac lining the lungs. According to the National Cancer Institute, a history of asbestos exposure at work is reported in about 70% to 80% of all cases; however, mesothelioma has been reported in some individuals without any known exposure to asbestos (see , cached at ).
[3] Plaintiffs' brief indicates that "[a]ll defendants in this case [which include 30 plus manufacturers and suppliers] other than the Port Authority have already settled Plaintiffs' claims."
[4] We have never considered whether a manufacturer or supplier of an asbestos-containing product is liable for injuries to third parties, or caused by so-called secondhand exposure.