*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DAVID MARTIN, Executor of the Estate of
Dennis B. Martin,

                    *Plaintiff-Appellant,*

        *v.*

CINCINNATI GAS AND ELECTRIC COMPANY,
GENERAL MOTORS CORPORATION, GENERAL
ELECTRIC COMPANY,

                    *Defendants-Appellees.*

No. 07-6385

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 02-00201—David L. Bunning, District Judge.

Argued: October 29, 2008

Decided and Filed: January 27, 2009[*]

Before: SILER and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[**]

_____

## COUNSEL

**ARGUED:** Kenneth L. Sales, SALES, TILLMAN, WALBAUM, CATLETT & SATTERLEY, Louisville, Kentucky, for Appellant. Gary J. Sergent, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, James K. Vines, KING & SPALDING, Washington, D.C., Scott T. Dickens, FULTZ, MADDOX, HOVIOUS & DICKENS, Louisville, Kentucky, for Appellees. **ON BRIEF:** Kenneth L. Sales, Paul J. Kelley, SALES, TILLMAN, WALBAUM, CATLETT & SATTERLEY, Louisville, Kentucky, for Appellant. Gary J. Sergent, Michael J. O'Hara, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, James K. Vines, KING & SPALDING, Washington, D.C., Scott T. Dickens, FULTZ, MADDOX, HOVIOUS & DICKENS, Louisville, Kentucky, Eric M. Cavanaugh, DUKE

_____

[*] This decision was originally issued as an "unpublished decision" filed on January 27, 2009. On March 30, 2009, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

ENERGY SHARED SERVICES, INC., Plainfield, Indiana, for Appellees.  Mark A. Behrens, SHOOK, HARDY & BACON, Washington, D.C., for Amicus Curiae.

————————————

**OPINION**

————————————

McKEAGUE, Circuit Judge.  Dennis Martin ("Mr. Martin") died from malignant mesothelioma on March 22, 2002.  His son, David Martin ("Plaintiff"), serving as executor of his father's estate, filed a complaint based on asbestos exposure in Kentucky state court against nine defendants.  Defendants removed the case to the Eastern District of Kentucky based on diversity.

After various defendants settled or were dismissed from the suit, claims remained against Cincinnati Gas & Electric Company ("CG&E"), General Electric ("GE"), and General Motors ("GM").  The claims against CG&E and GE were based on asbestos that Mr. Martin's father, Vernon Martin, brought home on his work clothes while working for CG&E.  The claim against GM was based on Mr. Martin's alleged exposure to asbestos while working as a ship mechanic from 1979 to 1984.  The district court found that Plaintiff did not raise an issue of material fact regarding causation in his claim against GM, and so granted summary judgment to GM.  The district court also granted summary judgment for CG&E and GE because the injury to Mr. Martin was not foreseeable at the time of exposure.    Plaintiff appeals both orders.  For the reasons given below, we affirm the district court's orders.

**I.  BACKGROUND**

Mr. Martin's father worked for CG&E for thirty-eight years.  He began working for CG&E in 1951 as a laborer.  Within a year, he was promoted to mechanic.  His work at CG&E during this period involved underground power lines.  The work brought him into contact with fireproofing that contained asbestos.  In the 1950's, he worked with fireproofing every month or two.  One power line in particular, the "66," was treated only with asbestos.  Mr. Martin's father worked on the 66 "[q]uite a few" times.  In

1963, he was promoted to equipment operator, where he operated heavy excavating machinery. In 1973, he was promoted to senior mechanic in underground utilities. The district court found that his work with asbestos lasted from 1951 to 1963. *Martin v. Gen. Elec. Co.*, No. 02-201-DLB, 2007 WL 2682064, at *1-2 (E.D. Ky. Sept. 5, 2007). Plaintiff does not challenge that finding on appeal. As Mr. Martin was born in 1952, the relevant asbestos exposure occurred between 1952 and 1963.

Internal memoranda indicate that CG&E used asbestos products. Several documents from CG&E also indicate that GE provided asbestos products to CG&E. A memo from 1948 notes an order from GE for "asbestos gaskets." Another order indicates that CG&E purchased pipe insulation from GE. Several other memos indicate that GE provided most of the materials for CG&E pipes.

CG&E provided lockers and showers for their employees. After work, Mr. Martin's father would sometimes shower and change at CG&E. Other times, he would go directly home. When he got home, he would most often change and leave his work clothes in the basement laundry room. Occasionally, he would do yard work in his work clothes. Mr. Martin's father recalls Mr. Martin sometimes sitting on his lap or hugging him while he was still in his work clothes.

Mr. Martin's mother, Mary Helen, did the laundry. Mr. Martin and his cousin, Steve Boesing ("Mr. Boesing"), would often play in the basement. The laundry room, however, was in a separate room in the basement, "way over on the far side" from where the children played. This proximity to his father's work clothes is the basis for Mr. Martin's first potential exposure to asbestos.

After serving in the Navy, Mr. Martin held a variety of jobs in the Kentucky area. Many of these jobs involved ships; others involved chemical manufacture. The record does not include testimony regarding asbestos exposure during Mr. Martin's time at these other positions. Mr. Boesing frequently worked with Mr. Martin. At many of these jobs, Mr. Boesing remembered no exposure to anything that might have been asbestos. This was not the case at Valley Line Company, where Mr. Martin was

employed from 1979 to 1984 as a welder and a mechanic. Mr. Boesing also worked at Valley Line, and he recalled asbestos in a variety of forms.

Mr. Boesing recalled working with products made with asbestos during periodic engine overhauls. Eighty-five percent of the engines that Mr. Martin and Mr. Boesing worked on were manufactured by EMD, a GM subsidiary. During the overhauls, Valley Line employees would sometimes have to remove insulation from the exhaust systems. Mr. Boesing believed this insulation was provided by the shipyard when the boats were built. There were two general types of insulation: a silver mesh that could simply be unhooked from the exhaust, and a white insulation with a hard shell. With the latter type, Mr. Martin would have to cut through the hard shell in order to reach the engine. The need to cut through the shell would only occur on one out of four engine overhauls, and it would often involve only enough to remove a bolt.

During the course of work at Valley Line, Mr. Boesing and Mr. Martin also frequently used gaskets. There were two types of gaskets: precut and custom. Precut gaskets were made by EMD. When Valley Line employees made custom gaskets, they did so with materials provided by a different company, Durabla. The new gaskets used during engine overhauls were the precut EMD gaskets. They were installed as provided; at no point did Valley Line employees cut into the new EMD gaskets. Removing old gaskets created a visible white dust. Mr. Boesing did not know if the gaskets replaced during overhauls were made by GM.

Mr. Martin and Mr. Boesing also replaced power packs on ship engines. Part of this work involved removing old gaskets, which created dust. There were also fireproofing blankets, made by Triangle Insulation. Mr. Boesing believed the blankets contained asbestos. He noted that employees would cut portions of these blankets to use when welding in sensitive areas. Additionally, the ship engine rooms had asbestos pegboard walls, but the walls were rarely moved and so produced little dust. The hot water lines also had white insulation. Mr. Martin's work with these materials at Valley Line constitutes his second potential exposure to asbestos.

After Plaintiff filed his complaint and the case was removed to the Eastern District of Kentucky, motions for summary judgment ensued. The district court granted GM's motion because "there is no evidence that GM manufactured or supplied" the relevant insulation. *Martin v. Cincinnati Gas & Elec. Co.*, No. 02-201-DLB, slip op. at 14 (E.D. Ky. May 25, 2006). The district court granted summary judgment for CG&E and GE because neither CG&E nor GE had a legal duty to Mr. Martin. *Martin v. Gen. Elec. Co.*, No. 02-201-DLB, 2007 WL 2682064, at *9 (E.D. Ky. Sept. 5, 2007). This appeal followed.

## II.  ANALYSIS

### A.       Standard of Review

As this is a diversity action, Kentucky substantive law applies. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). Procedurally, federal standards for summary judgment govern. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001).

This court reviews a district court's grant of summary judgment de novo. *Nichols v. Moore*, 477 F.3d 396, 398 (6th Cir. 2007). At the summary judgment stage, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). In order to survive summary judgment, the nonmovant must meet the movant's motion with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A "scintilla of evidence" will not suffice. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

### B.       GM Products Were Not a Substantial Factor in Causing Mr. Martin's Mesothelioma

"To recover under a claim of negligence in Kentucky, a plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages." *Lee v. Farmer's Rural Elec. Coop. Corp.*, 245 S.W.3d 209, 211-12 (Ky. Ct. App. 2007). Kentucky

utilizes the Restatement (Second) Torts § 431 test for causation: the plaintiff must show that the defendant's "conduct is a substantial factor in bringing about the harm." *Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 871 (Ky. Ct. App. 2001).

Under Kentucky law, causation is generally a question of fact for the jury. *Id.* at 872. However, causation should not go to the jury unless the inference of causation is reasonable: it must "indicate the *probable*, as distinguished from a *possible* cause." *Id.* at 873 (quoting *Briner v. Gen. Motors Corp.*, 461 S.W.2d 99, 101 (Ky. Ct. App. 1970)); *see also Huffman v. SS. Mary & Elizabeth Hosp.*, 475 S.W.2d 631, 633 (Ky. Ct. App. 1972).

As the district court cogently summarized the evidence, Plaintiff has not established that GM products contained asbestos or that Plaintiff was ever exposed to any asbestos from GM products. At best, Mr. Boesing's deposition establishes that Mr. Martin used precut gaskets made by a GM subsidiary and that GM gaskets were used on the engines. Yet Mr. Boesing stated that the precut gaskets did not require any cutting and that the asbestos insulation did not come from GM. Indeed, the sources that Mr. Boesing believed were most likely to contain asbestos were not GM products: the custom gaskets, which were made by Durabla; the insulation on the engines, which was installed by the shipyard; and the fireproof blankets, which were made by Triangle Insulation. The deposition thus does not provide a reasonable inference that Mr. Martin was exposed to asbestos from GM products.

Plaintiff also argues that, because mesothelioma is a progressive disease, any exposure is a substantial cause. This argument would make every incidental exposure to asbestos a substantial factor. Yet one measure of whether an action is a substantial factor is "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." RESTATEMENT (SECOND) OF TORTS § 433(a). The Sixth Circuit responded to a similar argument in a maritime action by stating that an expert's opinion that "every exposure to asbestos, however slight, was a substantial factor" was insufficient because it would render the substantial factor test "meaningless." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 493 (6th Cir. 2005).

As discussed above, Plaintiff did not proffer evidence that supports a reasonable inference of exposure from GM products, much less that GM products were a substantial factor in causing Mr. Martin's mesothelioma.

### C.      Neither CG&E nor GE Had a Legal Duty to Mr. Martin

For the claims against CG&E and GE, the analysis shifts from causation to duty. Duty presents a question of law for the judge to decide. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). In Kentucky, there is a universal duty of care which requires "every person . . . to exercise ordinary care in his activities to prevent foreseeable injury." *Lee v. Farmer's Rural Elec. Cooperative Corp.*, 245 S.W.3d 209, 212 (Ky. Ct. App. 2007) (quoting *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)). "'The most important factor in determining whether a duty exists is foreseeability.'" *Pathways*, 113 S.W.3d at 89 (quoting DAVID J. LEIBSON, KENTUCKY PRACTICE, TORT LAW § 10.2 (1995)); *see also Fryman v. Harrison*, 896 S.W.2d 908, 909 (Ky. 1995). Foreseeability, in turn, is determined based on "what the defendant knew at the time of the alleged negligence." *Pathways*, 113 S.W.3d at 90; *see also James v. Wilson*, 95 S.W.3d 875, 891 (Ky. Ct. App. 2002) ("[F]oreseeability is to be determined by viewing the facts as they reasonably appeared to the party charged with negligence, not as they appear based on hindsight."). "[P]roper application of negligence law requires courts to view the facts as they reasonably appeared to the party charged with negligence." *Mitchell v. Hadl*, 816 S.W.2d 183, 186 (Ky. 1991).

The defendant's knowledge at the time includes "knowledge of pertinent matters . . . as a reasonable man would have." *Pathways*, 113 S.W.3d at 90 (quoting RESTATEMENT (SECOND) OF TORTS § 289(a)). This knowledge includes the "capacities of things and forces in so far as they are matters of common knowledge at the time and in the community." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 290(a)).[1]

---

[1]Plaintiff cites a Pennsylvania case for the principle that once any danger is established, defendants cannot argue that they had no notice the danger would spread. *Westerman v. Stout*, 335 A.2d 741, 745 (Pa. Super. Ct. 1975). *Westerman* provides little guidance for the case at hand. *Westerman* involved a man-made fog; when the fog spread off of defendant's property, the defendant argued that it

In assessing what GE and CG&E should have known, there are two relevant time periods. The evidence indicates that GE provided materials containing asbestos to CG&E from 1937 to 1955. CG&E, meanwhile, placed Mr. Martin's father in proximity to asbestos materials intermittently from 1951 to 1963. Martin must show that GE knew or should have known the danger of bystander asbestos exposure during the first time period; it must make the same showing for CG&E during the second period.

There is no evidence that either defendant had actual knowledge of the danger of bystander exposure, so the question is whether they should have known: that is, was such a risk foreseeable to them based on "common knowledge at the time and in the community." *Pathways*, 113 S.W.3d at 90 (quoting RESTATEMENT (SECOND) OF TORTS § 289(a)). We agree with the district court that Martin has failed to show the risk was foreseeable at the relevant times.

In order to demonstrate the foreseeability of bystander exposure during these periods, Plaintiff submitted an export report by Dr. Barry Castleman as well as selections from Dr. Castleman's treatise *Asbestos: Medical and Legal Aspects*. Neither the report nor the treatise, however, provides evidence of a general awareness of the dangers of bystander exposure–even inside the specialized fields of asbestos manufacture or utility companies. The treatise has a section entitled "Earliest Recognition of the Potential for Bystander Asbestos Disease"; however, in its discussion of scientific research before the 1950's, it only documents direct exposure. In a 1911 study, some experts were concerned that those not working directly with asbestos could also develop asbestosis, but they were concerned only with neighbors of asbestos factories and "workers next to

---

"had no notice that it would cover the turnpike and create a traffic hazard." *Id.* at 201. The trial court found this preposterous:

> It was bound to anticipate the action of the wind and realize that the man-made fog could reach the roadway and cause visibility problems. In addition, the likelihood of such an accident was so obvious and the requirements for reducing the risk so minimal in comparison, that it was unreasonable to permit this condition to exist.

*Id.* at 201-02.

The risk of bystander exposure is nowhere near as self-evident as the risk that fog would spread. As the record demonstrates, it took scientists decades after they learned of the dangers of direct asbestos exposure to learn of the risks of bystander exposure.

those with dusty jobs." (J.A. at 454.) Studies in the 1930's found asbestosis in office workers at asbestos factories and mines, while there were calls in the 1940's for filtering systems at asbestos factories to avoid massive emissions of asbestos dust, which may endanger neighbors. (J.A. at 454-58.) All of these examples involve people in close proximity to asbestos emissions at factories or mines.

The report also refers to a deposition from a different case, taken in 1993, in which a Monsanto employee testified that Monsanto required employees in the 1950's to shower and change at work because Monsanto "didn't want [asbestos] in the home." (J.A. at 383.) There is no indication of the basis for the Monsanto practice or that Monsanto's practice was shared with other companies or publicized in any way. Instead, the report states that "[s]tudies on the occurrence of asbestos disease that included family members of asbestos-exposed workers were not published until the 1960's." The report does also conclude that "the hazard of asbestos exposure to families of the workers was scientifically knowable since the 1950's." (J.A. at 385.)

These sources do not provide a basis for attributing knowledge of the risk of bystander exposure in the home to either GE or CG&E. GE stopped supplying CG&E with asbestos products in 1951, and the expert report explicitly finds that the risk to family members was only knowable beginning in the 1950's. Not only does the report not indicate whether the risk was knowable before 1952, it is insufficient that the danger was merely knowable–the knowledge has to have been available to the defendant. *See Pathways*, 113 S.W.3d at 90. There has been no showing of any general knowledge of bystander exposure in the industry. Indeed, other courts have found there was no knowledge of bystander exposure in the asbestos industry in the 1950's. *See, e.g.*, *In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*, 740 N.W.2d 206, 218-20 (Mich. 2007).

Turning to CG&E, we find no evidence in the record to charge CG&E with knowledge of the danger of bystander exposure. Plaintiff's expert report concedes that the first studies of bystander exposure were not published until 1965. Mr. Martin's father's exposure to asbestos materials stopped in 1963. Without any published studies

or any evidence of industry knowledge of bystander exposure, there is nothing that would justify charging CG&E or GE with such knowledge during the time that Mr. Martin's father was working with asbestos.

Plaintiff cites cases from several other states that find manufacturers and employers liable for asbestos-related illnesses from asbestos dust brought home from work. The best cases for Plaintiff are *Olivo v. Owens-Illinois, Inc.*, 895 A.2d 1143, 1149 (N.J. 2006), and *Zimko v. Am. Cyanamid*, 905 So. 2d 465, 484 (La. Ct. App. 2005). Both find a duty based on secondary exposure to asbestos. Though each analysis is rooted in foreseeability, neither opinion persuasively explains how the defendant could have known the risk of secondary exposure involved.[2] *Olivo*, 895 A.2d at 1149; *Zimko*, 905 So. 2d at 483-84. The other cases Plaintiff cites are either factually or legally distinguishable.[3]

Weighted against these cases are a number of other cases in which courts have found no duty for secondary asbestos exposure. *See CSX Transp., Inc. v. Williams*, 608 S.E.2d 208, 210 (Ga. 2005); *Adams v. Owens-Illinois, Inc.*, 705 A.2d 58, 66 (Md. Ct. App. 1998); *In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*, 740 N.W.2d at 218-20; *In re New York City Asbestos Litig.*, 840 N.E.2d 115, 121 (N.Y. 2005); *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 462 (Tex. Ct. App. 2007).

Several of these decisions indicate that secondary exposure was not foreseeable in the 1950's and early 1960's. *See, e.g.*, *Alcoa*, 235 S.W.3d at 462 ("[T]he danger of non-occupational exposure to asbestos dust on workers' clothes was neither known nor reasonably foreseeable to Alcoa in the 1950s."); *In re Certified Question from*

---

[2]Amicus also point out that another Louisiana appellate opinion recently called *Zimko* into question. *Thomas v. A.P. Green Indus., Inc.*, 933 So.2d 843, 871-72 (La. App. 2006) (Tobias, J., concurring). The concurring opinion notes that *Zimko* was a 3-2 decision and that neither party appealed the judgment to the Louisiana Supreme Court.

[3]*Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 374 (Tenn. 2008) (relevant employment began after OSHA regulations); *Chaisson v. Avondale Indus.*, 947 So.2d 171, 181 (La. App. 2006) (relevant employment occurred after OSHA regulations); *In re New York City Asbestos Litig.*, 786 N.Y.S.2d 26 (N.Y. App. Div. 2004) *rev'd by* 840 N.E.2d 115 (N.Y. 2005); *Kowalski v. Goodyear Tire & Rubber Co.*, 841 F. Supp. 104, 111 (W.D.N.Y. 1994) (distinguishing toxic chemical exposure from asbestos exposure where, despite evidence of danger from direct exposure, there had been no knowledge of "risk simply through secondary exposure").

*Fourteenth Dist. Ct. of Appeals of Tex.*, 740 N.W.2d at 218 (finding the harm was not foreseeable because from "1954 to 1965 . . . we did not know what we know today about the hazards of asbestos").

These state court decisions do not reach a uniform result, but we find the cases declining to find a duty to be more persuasive based on our reading of Kentucky law and the facts of this case.   Accordingly, we find that defendants did not owe a duty to Mr. Martin.[4]

### D.        Neither CG&E nor GE are Liable under a Bystander Theory

Plaintiff also asserts a strict liability claim, arguing that Mr. Martin was a bystander injured by defendants' asbestos. Kentucky recognizes a bystander claim under a products liability framework. *Embs v. Pepsi-Cola Bottling Co.*, 528 S.W.2d 703, 706 (Ky. 1975).[5] *Embs* involved a plaintiff who was lacerated by an exploding bottle of soda on a shelf near where she was standing in a market. *Id.* at 703.   The Kentucky Supreme Court held that manufacturers and retailers could be held liable for injuries to bystanders under an extension of Restatement 402A. *Id.* at 705-06.   It noted, however, that the rule "is limited to bystanders whose injury from the defect is reasonably foreseeable." *Id.* at 706 (citation omitted).   As discussed above, there is no evidence that the danger from secondary exposure was reasonably foreseeable at the time of Mr. Martin's exposure. Without any evidence before it establishing foreseeability at the time of exposure, the district court correctly found that Plaintiff did not present sufficient evidence to survive summary judgment on a bystander liability claim.

---

[4] Premises liability does not alter this analysis.  Plaintiff quotes Restatement (Second) of Torts § 371 in support of premises liability.  Section 371, however, also incorporates foreseeability.  It states that liability arises for activity that the possessor of the land "realizes or should realize will involve an unreasonable risk of harm."

[5] There is no bystander claim against CG&E.  CG&E's only relationship to Mr. Martin is as a premises owner.  The only authority for a bystander claim in Kentucky is based purely in products liability. *See Embs*, 528 S.W.2d at 706 ("The protections of Section 402A of the Restatement of Torts 2d extend to bystanders whose injury from the defective product is reasonably foreseeable.").  Products liability is predicated upon a product in the stream of commerce.  RESTATEMENT (SECOND) OF TORTS § 402A.  "The responsibility for liability under section 402A is in the sale of a defective product by one who is engaged in the business of selling." *Griffin Indus., Inc. v. Jones*, 975 S.W.2d 100, 102 (Ky. 1998).  CG&E did not sell asbestos and is not engaged in the business of selling asbestos.

### III. CONCLUSION

We **AFFIRM** summary judgment in favor of GM based on the lack of evidence connecting GM to Mr. Martin's asbestos exposure. We also **AFFIRM** summary judgment in favor of CG&E and GE because neither knew or should have known of the danger of secondary asbestos exposure.