KAREN NELSON MOORE,
Circuit Judge, dissenting.
I disagree with the majority that the “any” or “every exposure” theory of causation is foreclosed by our holding in Martin v. Cincinnati Gas & Electric Co., 561 F.3d 439 (6th Cir. 2009), and its progeny. Although we are generally bound by the principles of stare decisis, our decisions in diversity actions are controlling only insofar as the state supreme court remains silent on the matter. Where, as here, a state supreme court later clarifies the state law, we must apply the law in accordance with those decisions. A year after Martin, the Kentucky Supreme Court made clear in CertainTeed Corp. v. Dexter, 330 S.W.3d 64 (Ky. 2010), that the “any” or “every exposure” theory is an acceptable theory of causation that can satisfy Kentucky’s “substantial factor” standard. Because I believe that CertainTeed controls this case, I respectfully dissent.
As a federal court sitting in diversity, we are obliged to “apply state law in accordance with the controlling decisions of the state supreme court.” Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc., 249 F.3d 450, 454 (6th Cir. 2001); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Although it is our duty, where the state’s highest court is silent, to “ascertain from all available data what the state law is,” Bailey v. V&O Press Co., Inc., 770 F.2d 601, 604 (6th Cir. 1985), where the state supreme court subsequently issues a decision contrary to our own, we are required to adopt prospectively the state decision clarifying state law. See Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327 (1941) (“appellate tribunals ... should conform their orders to the state law as of the time of the entry”); Rutherford v. Columbia Gas, 575 F.3d 616, 619 (6th Cir. 2009).
In Martin, we held that the theory on which Stallings relies, that “any” or “every exposure” is a substantial cause of his asbestos-related injury, was insufficient to prove causation under Kentucky law, because “it would render the substantial factor test ‘meaningless.’ ” Martin, 561 F.3d at 443-44. Subsequent to our holding in Martin, however, the Kentucky Supreme Court in CertainTeed relied on the same “every exposure” theory to support a finding of causation. CertainTeed, 330 S.W.3d at 78. Specifically, in assessing the liability of certain empty-chair defendants who manufactured asbestos-containing products, the CertainTeed court held that “the primary evidence of causation in this case was from the medical experts” who testified that “every single exposure to asbestos would have been the legal cause of [plaintiffs] illnesses.” Id. at 77-78. Testimony from two experts who advanced this theory, and one other expert whose testimony was consistent with that theory, provided “ample evidence” that exposure to the empty-chair defendants’ products was a substantial factor in bringing about plaintiffs injury. Id. The Kentucky Supreme Court concluded that “there was uncontroverted evidence that each exposure to asbestos would have been a legal cause of [plaintiffs] injuries. Consequently, the evidence of exposure to the empty-chair defendants’ products means that they must have legally caused some por *555 tion of [plaintiffs] injuries.” Id. at 78-79 (emphasis added).
Rather than follow the Kentucky Supreme Court’s decision, the majority attempts to distinguish CertainTeed, arguing that the state court did not squarely adopt the “every exposure” theory. They point, first, to the limiting language contained in the opinion. That language, however, has no bearing on the question of legal causation, or the appropriateness of the “every exposure” theory in proving causation. The state supreme court declined to review wholly separate issues that had been the subject of prior proceedings, including the scope of the second trial, and whether plaintiff could bring both strict liability and negligence claims against each defendant.[1] Id. at 70-71. After outlining what questions were not at issue, the Certain-Teed court went on to address the questions that were, including “what a defendant must prove to obtain apportionment against an empty-chair defendant,” Id. at 71. Even under a deferential “clearly erroneous” standard, this “require[d] that there was evidence sufficient to prove fault on the part of at least some of the empty-chair defendants.” Id. at 74. The state supreme court opinion makes clear that this holding required evidence of legal causation. Id. at 77. The acceptability of the “every exposure” theory fits squarely within the scope of the narrow question before the Kentucky Supreme Court. Under these circumstances, we are not entitled to disregard the decision of the state supreme court on the basis of contradictory precedent from our circuit.
The majority next contends that the state court’s adoption of the “every exposure” theory is not binding because the evidence supporting a finding of causation in CertainTeed “could equally well have been” additional evidence cited by the court. The majority mischaracterizes the CertainTeed court’s treatment of this additional evidence. None of the additional evidence was alone sufficient to support the court’s ultimate conclusion that there was evidence of causation. The Kentucky Supreme Court explicitly rejected the argument, advanced here by the majority, that Dr. Hammar’s testimony contradicted the “every exposure” theory. Id. at 78. It noted, instead, that Dr. Hammar’s testimony was “consistent with” the testimony of plaintiffs’ expert and treating physician, and that a contrary interpretation “would only work if Dr. Hammar had set a minimum cut-off of exposure.” Id. In other words, the testimony he provided regarding the intensity and duration of exposure was not dispositive unless he also established the level at which exposure could be classified a substantial factor. In addition, the admission made by plaintiff’s counsel in their opening statement was not sufficient to prove causation. In fact, the Kentucky Supreme Court specifically declined to affirm the trial court "solely on the basis of counsel’s opening statement.” Id. at 78 n.8. None of the additional evidence was sufficient to support a finding of substantial causation.
In contrast, adoption of the “every exposure” theory was necessary to the outcome in CertainTeed. Even if the court did rely on additional evidence such as the “high concentration of asbestos fibers in [plaintiffs] lungs,” there was no other testimony about what level of exposure was sufficient to cause the injury. Id. at 78. The Kentucky Supreme Court made clear that evidence of exposure was insufficient to prove causation; it required a showing that the exposure was a substantial factor in bringing about the injury. Id. at 77. The court *556 relied upon the “every exposure” theory to determine the level at which exposure is considered a substantial factor. Id. at 78. The conclusion reached by the Kentucky Supreme Court is simply not possible unless the court squarely adopted the “every exposure” theory as an acceptable theory of causation.
As the majority notes, one year after CertainTeed was decided, we reaffirmed Martin’s rejection of the “every exposure” theory without any reference to Certain-Teed. See generally Moeller v. Garlock Sealing Tech., LLC, 660 F.3d 950 (6th Cir. 2011). The majority argues that Moeller did not address CertainTeed because the Kentucky Supreme Court’s limited holding did not alter our prior rejection of the “every exposure” theory. Yet the majority admits that Moeller failed to consider or even mention the CertainTeed case. There is nothing to suggest that the failure to mention the case in Moeller, which was issued just a year after CertainTeed, was anything more than an oversight. Our duty to adhere to the decisions of state supreme courts in diversity cases may not be evaded merely because our cases mistakenly overlook prior state court decisions. See United States v. Maness, 23 F.3d 1006, 1009 (6th Cir. 1994) (disregarding a Fourth Circuit case that failed to follow a contrary prior state supreme court decision); Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir. 1981) (“A federal court ... would be obliged to disregard a state law holding by the [federal] court of appeals if persuaded ... that prior state court decisions had been inadvertently overlooked by the pertinent court of appeals”).
“Where a state’s highest court has spoken to an issue, we are bound by that decision unless we are convinced that the high court would overrule it if confronted with facts similar to those before us.” Kurczi v. Eli Lilly & Co., 113 F.3d 1426, 1429 (6th Cir. 1997) (quoting Kirk v. Hanes Corp., 16 F.3d 705, 707 (6th Cir. 1994)). I find no justification for straying from CertainTeed on the basis of the facts in this case. In fact, the testimony provided by Stallings’s experts is indistinguishable from the medical testimony on which the CertainTeed court relied. Stallings’s expert, Dr. Arthur L. Frank, who also testified on behalf of the plaintiff in Cer-tainTeed, testified that “[t]he cumulative exposures that [Stallings] had to asbestos from any and all products containing any and all fiber types would have contributed to his developing this malignancy.”[2] R. 172-4 (Frank Dep. at 43-44) (Page ID #5642). Stallings’s other medical expert, Dr. James Strauchen, expressed a similar view. He stated that “[a]ll of [Stallings’s] exposures to asbestos would have been substantial causes of his mesothelioma.” R. 172-6 (Strauchen Dep. at 21) (Page ID #5703).
In declining to adopt the “every exposure” theory, the majority makes the odd assertion that
the Kentucky Supreme Court at most determined that, under a clearly erroneous scope of review, the district court had found enough evidence of causation to get to a jury in a ease where two doctors relied on an “every exposure” theory, but another doctor testified in favor of causation without relying on such a theory, and the plaintiffs’ original opening statement—asserting causation—“further compelled” deference to the trial court’s determination.
*557 Maj. Op. at 553. I reject this interpretation, which essentially limits the Certain-Teed holding to the very specific facts of that case. However, even accepting the majority’s narrow read of CertainTeed, I find no reason to come to a different conclusion here. Stallings did not rely solely on the “every exposure” theory. In his deposition, Stallings stated that he had personal knowledge of using Georgia-Pacific products when working as a drywall finisher at two separate companies, R. 180-2 (Stallings Dep. at 25; 39-42) (Page ID #5799; 5803-04), and when working on a two-week project in his own home, id. at 47-50 (Page ID #5805-06).' Anne Ksion-zyk, a corporate representative for Georgia-Pacific, testified that the specific brands that Stallings used contained asbestos. R. 194-3 (Ksionzyk Dep. at 85-90) (Page ID #6584-85). In addition to his testimony regarding the “every exposure” theory, Dr. Strauchen specifically said that Stallings’s exposure to Georgia-Pacific products was a contributory factor to his illness. R. 172-6 (Strauchen Dep. at 38-40) (Page ID #5708). This evidence, when paired with medical testimony regarding the “every exposure” theory, is sufficient to establish legal causation under Kentucky law.
The Kentucky Supreme Court’s adoption of the “every exposure” theory is binding on this court. Stallings made a sufficient showing of legal causation by offering medical testimony that “every exposure” was sufficient to cause his injuries and additional testimony demonstrating exposure to asbestos contained in Georgia-Pacific’s products. Because I would reverse the district court’s grant of summary judgment to Georgia-Pacific, I respectfully dissent.

. Both strict liability and negligence claims require that a plaintiff establish causation. Holbrook v. Rose, 458 S.W.2d 155, 157 (Ky. 1970). The distinction is therefore irrelevant for our purposes.

. In CertainTeed, the Kentucky Supreme Court cited with approval Dr, Frank's statements that “[e]very exposure [plaintiff] would have had in all the years that he would have been exposed to any and all products would have added to his burden and would have contributed to the development of both of [his] diseases.” CertainTeed, 330 S.W.3d at 78.