BATCHELDER, C.J., delivered the opinion of the court, in which GUY, J., joined. GUY, J. (pp. 956-58), delivered a separate concurring opinion. MOORE, J. (pp. 958-59), delivered a separate dissenting opinion.
OPINION
ALICE M. BATCHELDER, Chief Judge.
Defendant-Appellant Garlock Sealing Technologies, LLC, (“Garlock”), a manufacturer of industrial sealing products, appeals the district court’s denial of its motion for judgment as a matter of law following a jury verdict against it. Because we conclude that the evidence is *952 not sufficient to support the jury’s verdict, we REVERSE.
I.
Robert Moeller (“Robert”), a pipefitter, worked with asbestos-containing gaskets made by Garlock from about 1962 until about 1970. From 1962 until about 1975, he also sustained significant exposure to asbestos insulation. He died on April 19, 2008, of mesothelioma, a cancer of the lining of the lung. Prior to his death, Robert and Plaintiff-Appellee Olwen Moeller, the surviving wife of Robert and executrix of his estate, sued Garlock (and several others not party to this appeal) under various theories, including strict liability and negligence, alleging that Robert’s exposure to Garlock’s asbestos-containing gaskets was a substantial factor in causing Robert’s injuries and death.[1] Garlock does not dispute that asbestos-containing products likely caused Robert’s mesothelioma; rather, Garlock argues that the mesothelioma was caused by Robert’s exposure to asbestos insulation, and that its own gaskets were not a substantial factor in causing the mesothelioma. The case was tried by a jury in February 2009.
At trial, the Plaintiff presented evidence that Garlock learned in the 1950s that its asbestos-containing gaskets may cause or contribute to cancer, but did not begin testing to determine the amount of asbestos fibers released by its products until 1980. She also presented evidence that Garlock placed no warnings on its gaskets during the time frame that Robert worked with them. Richard Hatfield, an expert for the Plaintiff, testified that he had tested gaskets substantially similar to those removed by Robert, and he concluded that Robert would have inhaled asbestos fibers in excess of the current Occupational Safety and Health Administration (“OSHA”) regulations for an eight-hour work period.
With respect to causation, the Plaintiff presented the testimony of Dr. Arthur Frank, a medical doctor who serves as a professor in the Department of Internal Medicine at Drexel University. Frank sub-specialized for forty years in the study of occupational exposure to asbestos. He testified that Robert’s exposure to asbestos from Garlock gaskets, along with his other exposures, contributed to Robert’s mesothelioma. One of Robert’s treating oncologists, Dr. Charles Webb, also testified. He stated that he treated Robert from December 2005 until he died on April 19, 2008, and that if Robert had worked for many years (as he did) scraping and grinding asbestos gaskets, and if Robert breathed those fibers, then that exposure would have caused his cancer.
In rebuttal, Garlock presented evidence that Robert had sustained substantial exposure to asbestos insulation products between 1962 and 1975. It also presented evidence that whereas asbestos insulation was banned in the 1970s, leading asbestos safety authorities believed that gaskets, such as those sold by Garlock, posed “no health hazard,” and are sold lawfully in the United States even today. Garlock also suggested that the Plaintiff presented only evidence that Robert had installed Garlock gaskets (an activity that both parties agree did not create a risk of injury), not that he had ever removed them (the activity that the Plaintiff alleges caused the injuries). Garlock presented the testimony of Dr. James Crapo, a pulmonologist, who testified that the particular type of asbestos fibers found in Garlock gaskets could not have caused Robert’s mesothelioma, and the asbestos exposure from the insulation *953 was far more severe than any exposure from gaskets.
After the Plaintiffs evidence had been presented, Garlock moved for a directed verdict, arguing that the Plaintiff had failed to establish that exposure to Garlock gaskets was a substantial cause of Robert’s mesothelioma. The court did not rule on the motion and instead submitted the case to the jury. The instructions for Question 1, dealing with strict liability, told the jury to find for the Plaintiff if Garlock’s product was defective and sold “without a reasonable notice or warning of danger.” The instructions for Question 2, dealing with negligence, characterized the claim as one of “negligent failure to warn.” Garlock objected to the instructions as duplicative. The court overruled the objection, and the jury ultimately answered “no” to the strict liability question (finding that Garlock’s product was not defective by reason of failure to warn or otherwise), but “yes” to the negligence question (finding that Gar-lock was negligent for failing to adequately warn about its product). The jury returned an award for the Plaintiff in the amount of $516,094.
Subsequently, Garlock moved for judgment as a matter of law, renewing its previous argument that the evidence presented by the Plaintiff was insufficient to sustain the jury verdict, and also arguing that the jury verdict was inconsistent. Garlock moved for a new trial on the same grounds. The district court denied both motions, and Garlock filed this timely appeal. It argues that the district court erroneously denied its motion for judgment as a matter of law and that the district court should have excluded certain expert testimony presented by the Plaintiff.
II.
Garlock argues that the district court erred by denying its motion for a judgment as a matter of law.[2] Specifically, it argues that the Plaintiff failed to establish that exposure to Garlock gaskets was a substantial cause of Robert’s mesothelioma.
In diversity cases, we look to state law for the standard under which to review the denial of a motion for judgment as a matter of law. Pivnick v. White, Getgey, & Meyer Co., 552 F.3d 479, 483 (6th Cir.2009). Under Kentucky law, the jury’s verdict must be upheld if, “drawing] all fair and rational inferences from the evidence in favor of the party opposing the motion,” the evidence is sufficient to sustain the verdict. Spivey v. Sheeler, 514 S.W.2d 667, 673 (Ky.1974) (internal quotation marks omitted).
To prevail on a negligence claim, Kentucky law requires a plaintiff to prove that a defendant’s conduct was a substantial factor in bringing about the harm. Deutsch v. Shein, 597 S.W.2d 141, 144 *954 (Ky.1980). Causation requires a link between the specific defendant’s conduct and the plaintiffs injuries. See Estes v. Gibson, 257 S.W.2d 604, 607 (Ky.1953) (absent connection between a specific act and injury, there is no legal liability); Cardinal Indus. Insulation Co., Inc. v. Norris, 2009 WL 562614, at *8 (Ky.Ct.App.2009) (“In the end, the asbestos defendant, like every tort defendant, remains entitled to have a causative link proven between that defendant’s specific tortious acts and the plaintiffs injuries.”). Substantial causation refers to the probable cause, as opposed to a possible cause. See Bailey v. N. Am. Refractories Co., 95 S.W.3d 868, 873 (Ky.Ct.App.2001). “[Ojne measure of whether an action is a substantial factor is the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it.” Martin v. Cincinnati Gas & Elec. Co., 561 F.3d 439, 443 (6th Cir.2009) (internal quotation marks omitted) (discussing causation in a diversity case based on Kentucky law); see Cardinal, 2009 WL 562614, at *8 (“The question whether [defendant’s] acts probably caused [plaintiffs] mesothelioma must be viewed in the context of [plaintiffs] other substantial exposure to asbestos....”).
In their briefs, both parties suggest that the Plaintiffs experts testified that exposure to Garlock gaskets substantially caused Robert’s cancer. (“[Dr. Webb] testified that Mr. Moeller’s exposure to asbestos from gaskets was a substantial cause of his mesothelioma.”)[3] However, briefs are no substitute for the record itself, and after conducting our own careful review of the record, including the testimony of each expert, we must conclude that the Plaintiff failed to prove that Garlock’s product was a substantial factor in bringing about the harm. Here, the Plaintiff presented various witnesses to support her claim that Robert’s mesothelioma was caused by his exposure to Garlock gaskets. The Plaintiff claims that Drs. Frank and Webb provided this causal link. However, Dr. Webb never testified that Robert’s exposure to Gar-lock gaskets was a substantial factor in causing Robert’s cancer, nor was Dr. Webb even certified as an expert on asbestos. Similarly, Dr. Frank testified only that all types of asbestos can cause mesothelioma and that any asbestos exposure counts as a “contributing factor.” (“All of his exposures — and one can’t differentiate them — contributed to his developing his mesothelioma.”). That testimony does not establish that exposure to Garlock gaskets in and of itself was a substantial factor in causing Robert’s mesothelioma.
At oral argument the Plaintiff expressly admitted — contrary to claims made in her brief — that her experts never explicitly testified that Robert’s exposure to Garlock gaskets was a substantial factor in causing his mesothelioma. However, she argued that the testimony was sufficient to allow the jury to infer that Robert’s exposure to Garlock gaskets was a substantial factor in causing his mesothelioma. In support of that argument, the Plaintiff relies on Lindstrom v. A-C Product Liability Trust, 424 F.3d 488, 492 (6th Cir.2005). In Lindstrom, a case governed by maritime law, this court noted that it “ha[s] permitted evidence of substantial exposure for a substantial period of time to provide a basis for the inference that the product was a substantial factor in causing the injury.” Id. However, the court cautioned that *955 “where a plaintiff relies on proof of exposure to establish that a product was a substantial factor in causing injury, the plaintiff must show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.” Id. The court also quoted with approval the following observation made by the district court in that case:
[The plaintiff’s expert] opines that there is no safe level of asbestos exposure, and that every exposure to asbestos, however slight, was a substantial factor in causing Lindstrom’s disease. If an opinion such as [the plaintiff’s expert’s] would be sufficient for plaintiff to meet his burden, the Sixth Circuit’s ‘substantial factor’ test would be meaningless.
Id. at 493.
Even if we assume that Lindstrom applies, the evidence presented by the Plaintiff was insufficient to allow a jury to infer that exposure to Garlock gaskets was a substantial cause of Robert’s cancer. Lindstrom requires that a plaintiff present proof of “a high enough level of exposure,” id. at 492; but the Plaintiff here presented no evidence quantifying Robert’s exposure to asbestos from Garlock gaskets. There is testimony that Robert removed gaskets for several years, and that some of those gaskets were Garlock’s. Robert testified that he worked with Garlock gaskets “every day,” but the Plaintiff failed to establish how many Garlock gaskets he removed, or how frequently he removed — as opposed to installed — them.[4] The record also shows that Robert regularly tore out asbestos insulation during the relevant years, and that his exposure to asbestos from insulation would have been thousands of times greater than his exposure from removing gaskets.
While Robert’s exposure to Garlock gaskets may have contributed to his mesothelioma, the record simply does not support an inference that it was a substantial cause of his mesothelioma. Given that the Plaintiff failed to quantify Robert’s exposure to asbestos from Garlock gaskets and that the Plaintiff concedes that Robert sustained massive exposure to asbestos from non-Garlock sources, there is simply insufficient evidence to infer that Garlock gaskets probably, as opposed to possibly, were a substantial cause of Robert’s mesothelioma. See Martin, 561 F.3d at 443 (holding that defendant’s liability must be evaluated in the context of other exposures); Cardinal, 2009 WL 562614, at *8 (same); of. Bailey, 95 S.W.3d at 873. On the basis of this record, saying that exposure to Gar-lock gaskets was a substantial cause of Robert’s mesothelioma would be akin to saying that one who pours a bucket of water into the ocean has substantially contributed to the ocean’s volume. Cf. Gregg v. V-J Auto Parts, Co., 596 Pa. 274, 943 A.2d 216, 223 (2007).
Because the evidence is insufficient to support the jury’s verdict, the district court erred when it denied the Defendant’s motion for judgment as a matter of law.
III.
For the foregoing reasons, we REVERSE the district court’s denial of Gar-lock’s motion for judgment as a matter of law. Consequently, we need not address the other issues raised by Garlock in this appeal.

. The case is properly in federal court due to diversity of citizenship. The parties agree that Kentucky law controls the substantive components of this case.

. The Plaintiff briefly argues that Garlock never presented its sufficiency of the evidence challenge to the district court. However, Garlock made an oral motion for judgment as a matter of law, which the district court accepted as "on any and all grounds that are available,” and Plaintiff acknowledged the motion. Garlock subsequently submitted a written motion, in which it fully briefed its sufficiency-of-the-evidence argument. Gar-lock renewed its motion after the jury verdict, arguing that the verdict was inconsistent and, in any event, was not supported by the evidence. Garlock also noted its sufficiency-of-the-evidence objection when it submitted its proposed jury instructions. In light of these actions, Garlock preserved its sufficiency-of-the-evidence challenge. Cf. Del Rio v. Toledo Edison Co., 130 Fed.Appx. 746, 751 n. 3 (6th Cir.2005) (holding that a party preserved an issue for appellate review even though she merely “allude[d] to the argument” in district court and did not fully develop the argument until her appeal).

. We also note that at times, Garlock cites portions of expert testimony that were, in fact, excluded at trial. See, e.g., Appellant’s Br. at 24 (citing R. 100 at 117, containing excluded testimony only present in the deposition "so that [the judge presiding at trial] will have a complete record for ... appeal.” R. 100 at 116).

. The Plaintiff does not allege that Robert's mesothelioma was caused by merely working with or installing Garlock gaskets; she argues that it was caused by cutting and removing them.