ROGERS, Circuit Judge.
Carol Lee Stallings brought this diversity action on behalf of herself and the estate of her late husband, seeking damages from the Georgia-Pacific Corporation for the asbestos-related illness that ultimately took his life. After enduring near-constant exposure to asbestos for some four years in the U.S. Navy, Mr. Stallings worked for several more years with a Georgia-Pacific product containing asbestos at his job finishing drywall. Neither of the medical experts that Stallings consulted for this suit, however, could quantify the extent of her husband’s exposure resulting from his contact with Georgia-Pacific’s products, and instead testified that any further exposure would have contributed to the development of his disease. Heeding this court’s decisions rejecting evidence of that kind as too insubstantial under Kentucky’s standard for causation, the district court accordingly granted summary judgment for Georgia-Pacific, and Stallings now appeals. Because this court’s precedents clearly foreclose the theory of causation on which Stallings relies against Georgia-Pacific, and the Kentucky Supreme Court has not clearly indicated that it would rule otherwise, the district court’s grant of summary judgment was proper.
During his nearly four years in the Navy, William Stallings served aboard the destroyer USS Waller, helping to operate and maintain the ship’s boilers. In that job he worked daily on and amid the ship’s *550 valves, pumps, piping, boilers, and turbines, all the while breathing in the asbestos-laced dust that their insulation and other coating materials gave off. The resulting asbestos exposure that he endured was, by all accounts, considerable.
After leaving the service Stallings went to work as a drywall finisher, first for Timmerman Drywall for a year, and then for Stigler Drywall for another two. In those jobs, too, Stallings regularly encountered asbestos-laden materials, this time in the form of the “mud” that he and his fellow finishers used to paste together drywall panels and which they later sanded down, stirring up asbestos-tainted dust. Stallings would later identify one of the materials he used on those jobs—and whose asbestos-laced dust he inhaled multiple times a week—as Bestwall, a product of the Georgia-Pacific Corporation. Several years later, while finishing two rooms in his home, Stallings again used a Georgia-Pacific drywall mix containing asbestos, and for two weeks or so inhaled the dust that the dried mixture unleashed when sanded.
In September 2011, Stallings received a diagnosis of mesothelioma, an incurable cancer resulting from exposure to asbestos. A year later he filed suit in Kentucky state court against Georgia-Pacific and the other manufacturers of the asbestos-containing products he had .been exposed to decades earlier, seeking punitive damages under theories of strict liability and negligence. His wife, Carol Lee, also claimed damages for loss of consortium. The case was later removed to the federal district court, and proceeded there until September 2013, when Stallings died of complications related to his mesothelioma. Soon after, Carol Lee Stallings filed an amended complaint as the surviving spouse and as executrix of Mr. Stallings’ estate, and added a wrongful-death claim.
The remaining defendants, including Georgia-Pacific, eventually moved for summary judgment, which the district court granted. Stallings v. Georgia-Corp., 2015 WL 7258518, at *2 (W.D. Ky. Nov. 17, 2015). As to the claims against Georgia-Pacific, the court found that Stallings had failed to establish that the company’s products were a substantial factor in bringing about Mr. Stallings’ cancer, as required for a finding of causation under Kentucky common law. Id. at *6. Pointing to this court’s line of cases-beginning with Martin v. Cincinnati Gas & Electric Co., 561 F.3d 439 (6th Cir. 2009), the district court noted that in order for the claims against Georgia-Pacific to survive a motion for summary judgment, Stallings would have had to provide evidence that the company’s products were probably, rather than possibly, a “substantial cause” of her husband’s mesothelioma. Stallings, 2015 WL 7258518, at *6. But Stallings’ medical experts could testify only “that any exposure to asbestos qualifies as a substantial exposure,” offering no more precise an estimate of how much of that exposure was due specifically to Georgia-Pacific’s products. Id. Determining that this “any exposure” theory of causation had been foreclosed by Martin and its progeny, the court concluded that Stallings therefore could not convince a “reasonable jury that [Mr. Stallings’] exposure to Bestwall was a probable cause of his mesothelioma,” especially not “in light of his substantial prior asbestos exposure while in the Navy.” Id. The district court accordingly dismissed the claims against Georgia-Pacific, and Stallings now appeals solely from that dismissal.
The district court’s grant of summary judgment was proper because there was not enough evidence of Stallings’ exposure to Georgia-Pacific’s asbestos-containing products to establish them as a likely *551 cause of the cancer that took her husband’s life. Under the Kentucky law that governs this diversity action, see Martin, 561 F.3d at 442, Stallings must show that Georgia-Pacific’s products were a substantial factor in bringing about Mr. Stallings’ disease rather than just a factor, see Moeller v. Garlock Sealing Techs., LLC, 660 F.3d 950, 953-54 (6th Cir. 2011) (citing Deutsch v. Shein, 597 S.W.2d 141, 144 (Ky. 1980)). Because this court has already rejected the type of evidence on which Stall-ings relies as simply too insubstantial to satisfy that standard, Stallings cannot show that Georgia-Pacific was legally responsible for Mr. Stallings’ injury.
Our precedents foreclose the theory at the heart of Stallings’ case for causation: that any further exposure to asbestos would have been a substantial factor in bringing about an asbestos-related disease like mesothelioma. As we held in Moeller and Martin, this “any” or “every exposure” theory of causation cannot satisfy Kentucky’s “substantial factor” standard, as that theory would “make every incidental exposure to asbestos a substantial factor,” rendering that standard, and its substantiality requirement, all but “meaningless.” Martin, 561 F.3d at 443 (citation omitted). Stallings nevertheless appears to rely on exactly that sort of theory in making her case for causation against Georgia-Pacific. Neither of her two medical experts could quantify the extent of Mr. Stallings’ exposure to the asbestos in the company’s products, instead insisting that every further exposure would have contributed to the development of hi^ disease.[1] But testimony of that kind—the only that Stallings can cite on behalf of her claim that Georgia-Pacific’s products were legally responsible for her husband’s cancer—is too spare to satisfy Kentucky’s “substantial factor” test, especially given the evidence of Mr. Stallings’ considerable daily exposure to asbestos aboard the USS Waller. See Moeller, 660 F.3d at 955, Stallings has accordingly failed to present evidence showing that those products were a probable, as opposed to a merely possible, cause of Mr. Stallings’ disease. Under Kentucky law, as this court has understood it, that failure is not enough to make a reasonable inference of causation, see Martin, 561 F.3d at 443 (citing Bailey v. N. Am. Refractories Co., 95 S.W.3d 868, 873 (Ky. Ct. App. 2001)). Georgia-Pacific was therefore entitled to summary judgment.
This conclusion, moreover, is not undermined by the Kentucky Supreme Court’s decision in CertainTeed Corp. v. Dexter, 330 S.W.3d 64 (Ky. 2010), a case never mentioned by either party until this court requested supplemental briefing to address it. CertainTeed came down a year after this court decided Martin, which, as explained, squarely rejected the “every exposure” theory as inconsistent with Kentucky’s “substantial factor” test for causation. Just a year after CertainTeed was decided, this court once again applied Martin’s holding in Moeller, without considering or indeed even mentioning the intervening ruling in CertainTeed and what impact, if any, it had on Martin’s *552 rejection of the “every exposure” theory. Our published reaffirmance in Moeller of Martin would therefore raise a difficult issue regarding stare decisis if the Kentucky Supreme Court had squarely adopted the “every exposure” theory in CertainTeed. However, it is far from clear that the CertainTeed court actually endorsed that theory.
CertainTeed involved a trial court’s grant of a new trial for several corporate defendants whose products, much as in this case, had allegedly exposed the plaintiff Dexter to asbestos. In the original trial the jury had declined to apportion any fault to several other empty-chair defendants, while in the second trial ordered by the trial court substantial percentages of fault were assigned to those defendants. The intermediate appellate court reinstated the original verdict declining to apportion fault to the empty-chair defendants, and the defendants obtained review in the Kentucky Supreme Court.
The Kentucky Supreme Court noted at the outset that:
[No] party in the present appeal challenged the appropriateness of the trial court’s approach to the strict liability and negligence claims against Certain-Teed and the other defendants, though there may be questions about whether both types of claims can be pursued against any single defendant. These issues, and others, may have been the subject of the appeal and cross-appeal of the second trial but were not addressed because of the Court of Appeals’ resolution of reinstating the original judgment. Such issues are not currently before this Court.
CertainTeed, 330 S.W.3d at 70-71. The court went on to examine “certain subsidiary issues,” but:
only to the extent necessary to resolve the primary issue of the appropriateness of the trial court’s grant of a new trial. For the most part, this opinion addresses those subsidiary issues as they have been framed by the parties, without further complication by other issues that might be unresolved, either because they have not been raised or have not yet been addressed by the Court of Appeals.
Id. at 71.
With this highly limiting qualification in place, the court proceeded to explain that “[e]mpty-chair defendants who have settled are to be treated no differently than participating defendants in regard to what must be proved to apportion fault against them.” Id. at 73-74. Then, applying a deferential “clearly erroneous” standard of review to the trial judge’s determination to order a new trial, the Supreme Court found sufficient evidence to support the grant of a new trial.
In conducting that deferential review, the Supreme Court detailed “[a] plethora of evidence show[ing] that Dexter was exposed to asbestos by many of the empty-chair defendants,” id. at 75, and that with respect to causation, “there was other, more specific evidence of legal causation,” id. at 77.
To be sure, the Supreme Court relied “first and foremost” on the testimony of two doctors—one of Dexter’s own experts at trial as well as his treating physician— who advanced an “every exposure” theory against the empty-chair defendants. See 330 S.W.3d at 78. The court, however, also relied on the testimony of another of Dexter’s ’ medical experts, Dr. Hammar. He had explained at trial—apparently at odds with the “every exposure” theory—that whether a product containing asbestos could be said to cause a related injury depended on “the intensity, the duration, and the number of years or months or *553 whatever they were exposed to it,” id. at 78 (internal quotation marks omitted). Although the court noted that this testimony did not necessarily conflict with the empty-chair defendants’ liability, as Dr. Hammar had set no “minimum cut-off of exposure,” id. the court nevertheless did not expressly rely on that point to reach its ultimate conclusion about causation—that the trial court had not clearly erred by “finding it to have been unreasonable for the jury to conclude that none of the empty-chair defendants contributed at. all to Mr. Dexter’s disease,” id. That conclusion was instead premised on what the court characterized as “prior evidence of these factors and the extremely high concentration of asbestos fibers in Dexter’s lungs (Dr. Hammar described it as the most he had ever seen in a pipe fitter’s lungs).” Id. Thus, the “ample evidence” that supported a finding of causation need not have been the expert testimony as to the “every exposure” theory. It could equally well have been the evidence that the court explicitly cited when drawing its conclusion on causation: evidence speaking to the intensity and duration of Dexter’s exposure to the defendants’ asbestos-laden products and the quantity of asbestos later found in his lungs.
In addition, the Supreme Court was “further compelled” by the plaintiffs’ admissions in their opening statement. In that statement, Dexter’s attorney appeared to concede that, based on the evidence of Dexter’s exposure to their products, the empty-chair defendants were also at fault for his injuries, to no small degree:
We’re not trying to suggest that GE or Johns-Manville or some other company didn’t have a role or responsibility. No, we think that there’s many companies that participated in causing the death of Mr. Dexter. We think these companies are significant and the evidence mil show that they caused Mr. Dexter to have significant exposure to their products.
Id. at 78 (emphasis added). Although the CertainTeed court declined to rely solely on this “factual admission” in affirming the trial court, it nevertheless made clear that it saw that statement as having “no doubt colored the trial court’s perception of the evidence, putting it on notice that the plaintiff may have been trying to have it both ways.” Id. at 78 n.8.
Thus the Kentucky Supreme Court at most determined that, under a clearly erroneous scope of review, the district court had found enough evidence of causation to get to a jury in a case where two doctors relied on an “every exposure” theory, but another doctor testified in favor of causation without relying on such a theory, and plaintiffs’ original opening statement—asserting causation—“further compelled” deference to the trial court’s determination. This analysis hardly requires the conclusion that “every exposure” expert testimony is by itself sufficient to get to a jury.
This is perhaps why we took no notice of CertainTeed in once again rejecting that theory in Moeller, and why the parties in that case, like those now before the court, did not even think to raise CertainTeed themselves,[2] In any event, it is clear enough that the CertainTeed court has not unequivocally resolved the issue. In the absence of clearer ruling from Kentucky’s highest court, keeping in mind this court’s duty to “attempt to ascertain how that court would rule if it were faced with the issue,” Meridian Mut. Ins. Co. v. Kellman, 197 F.3d 1178, 1181 (6th Cir. 1999), the fairer conclusion is that the evidence does *554 not yet definitively indicate that court would embrace the “every exposure” theory. Until Kentucky’s courts have more clearly signaled their readiness to accept that theory, we are bound to reject it here once again, in line with this court’s decisions in Moeller and Martin.
The judgment of the district court is affirmed.

. Stallings appears to contest this reading of the testimony, contending instead that '‘[b]oth Dr. Strauchen and Dr. Frank testified not that each and every exposure was a substantial factor but rather that cumulative exposures were the facts that caused mesothelioma and further dose would implicate greater degree of culpability.” That, however, is simply not borne out by the record. Asked whether “every exposure ,,. is a substantial cause of mesothelioma,” Strauchen agreed, noting that "[e]veiy exposure above background ... is a contributing cause of the mesothelioma.” Frank in his deposition likewise agreed that "any asbestos exposure counts as a contributing factor,” adding that "in someone’s life, some products may contribute more, some contribute less, but they all contribute.”

. The Kentucky Court of Appeals has recently reviewed the law on causation in mesothelio-ma cases, also without relying on or citing CertainTeed. See Mannahan v. Eaton Corp., 2016 WL 3887037, at *2-4 (Ky. Ct. App. July 15, 2016).